COURT OF APPEALS OF VIRGINIA


Present: Judges Bumgardner, Frank and Humphreys
Argued at Richmond, Virginia


STEPHEN M. SNEADE

                                    MEMORANDUM OPINION* BY
v.    Record No. 1105-99-2      JUDGE RUDOLPH BUMGARDNER, III
                                          OCTOBER 10, 2000
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
                     Robert G. O'Hara, Jr., Judge

            Peter D. Eliades (Eliades & Eliades, on
            brief), for appellant.

            Michael T. Judge, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     A jury convicted Stephen M. Sneade, age sixteen, of capital

murder, robbery, and use of a firearm in the commission of a

murder and in the commission of a robbery.  The defendant

contends the trial court erred in denying his motion to suppress

his confession.  On appeal, he contends he was in custody when

he made his confession and should have been given his <u>Miranda</u>

rights.[1]  He also argues that because he was a juvenile and the

focus of an investigation, he required the presence of a

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

     [1] We find no merit in the defendant's argument that he
should have been given <u>Miranda</u> warnings even if not in custody
because he was a juvenile.

guardian ad litem or counsel when he confessed.[2]  Finding no error, we affirm.

The proprietor of Anderson's Grocery in Brunswick County was robbed and murdered March 6, 1997.  The state police executed a search warrant at the defendant's home in Prince George County twelve days later.  After the search, the police took the defendant to the police station for questioning.  They advised the defendant of his Miranda rights, which he invoked without incident.  The defendant left the police station when his attorney arrived for him.

Eric Young was a detective with the Prince George Police Department assigned as a juvenile officer.  He worked primarily with juvenile cases and had his office in the court services office rather than in the police department building.  While Young had assisted executing the search warrant at the defendant's home and had occasional contact with the defendant, he had never discussed the Brunswick County case with him.

On January 12, 1998, Detective Young met with Shelby Fuller to discuss her school attendance.  Fuller told him she was dating the defendant.  Young told her that he had contact with the defendant in the past, and suggested that if the defendant ever felt "the need to talk . . . please have him give me a

---

[2] We find no merit in the argument that the defendant was coerced psychologically because he was a juvenile.

call, . . . or come by the office at any time." That evening, Fuller contacted Detective Young and advised that the defendant wanted to speak to him.

The next day, the defendant and Fuller went to Young's office as arranged. Because the office was crowded, the three walked to a park adjacent to the courthouse complex. Young asked the defendant if he wanted "to talk about anything" but noted it was entirely up to the defendant. The defendant said he did not care. Young commented that the defendant had had a rough year and suggested it would be in the defendant's best interest to tell his side of the story if he knew about the Brunswick incident. Young informed the defendant that he was not investigating the case and the most he could do for the defendant was to "put in a good word" with the Brunswick police. The three of them left the park and drove to the police department because it was too cold to remain outside. They continued talking in a private room at the police department.

Young again asked the defendant if he wanted to talk and again advised him that it was completely up to him. The defendant stated, "he'd rather write than talk." For forty to forty-five minutes, the defendant wrote his confession. Young and the defendant did not confer while he wrote, and Young did not make suggestions about what he should write. Fuller was present the entire time.

When the defendant finished writing, he gave his statement to Young, who asked permission to read it. After the defendant consented, Young read it and had the defendant sign and date each page. Young told the defendant he would have to contact the Brunswick authorities and would put in a good word for him. Young took the defendant and Fuller back to their car, and they left the complex.

When we review the voluntariness of a confession, we must conduct "an independent examination of the totality of the circumstances to determine whether the statement is the product of an essentially free and unconstrained choice by its maker, or whether the maker's will has been overborne and his capacity for self-determination critically impaired." Bailey v. Commonwealth, 20 Va. App. 236, 239, 456 S.E.2d 144, 145 (1995) (internal quotations and citations omitted).

Miranda warnings are required when a defendant is in custody and is being interrogated. See Blain v. Commonwealth, 7 Va. App. 10, 13, 371 S.E.2d 838, 840 (1988). Police are not required to give Miranda warnings every time they question a suspect, even when the interrogation takes place at the police station, see Bailey v. Commonwealth, 259 Va. 723, 745-46, 529 S.E.2d 570, 583 (2000), petition for cert. filed, ___ U.S.L.W. ___, (Sept. 6, 2000) (No. 00-6045), or "the investigation has focused on the defendant." Bosworth v. Commonwealth, 7 Va. App.

567, 573, 375 S.E.2d 756, 759 (1989) (citation omitted).  "No single factor determines custody for this purpose."  Id.  When the defendant initiates the conversation with the police, there is no interrogation.  See Ronald J. Bacigal, Virginia Criminal Procedure § 7-5, at 162 (4th ed. 1999).  Nor does the fact that the defendant's attorney was not present during his statement to police invalidate his confession.  See Bailey, 20 Va. App. at 239-40, 456 S.E.2d at 145.

The trial court ruled that the defendant knowingly waived his Miranda rights, that his written statement was voluntarily made and a product of his own free will, and that Detective Young did not exert pressure to overcome the defendant's will. Credible evidence supports those findings.

Here, the defendant was neither in custody nor interrogated; the requirements to invoke Miranda did not exist. The defendant initiated contact with Detective Young through his girlfriend.  The two voluntarily went to Young's office the next day and met with him.  During the meeting, the defendant and his girlfriend were always together.  They were free to leave at any time, and the physical surroundings permitted them to leave by simply walking off.  The defendant wrote his statement and took forty-five minutes to complete it.  He handed it to Detective Young, who asked permission before reading it.  As the trial court noted, the defendant understood his Miranda rights and

- 5 -

asserted them previously without incident.  This evidence provides no suggestion that the confession was other than voluntary.

We conclude the trial court did not err in denying the motion to suppress.  Accordingly, we affirm the defendant's convictions.

<u>Affirmed.</u>